IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

CORIN MILLS,

                                                                                       INDEX NO.   13cv8895
                                                                                                   (NRB)(AJP)
                                                                                                   ECF CASE
                         PLAINTIFF.
                   vs                                                                              FIRST AMENDED
                                                                                                   COMPLAINT

THE CITY OF NEW YORK, a municipal entity,      [JURY TRIAL
NEW YORK CITY POLICE OFFICERS                DEMANDED]
"JOHN DOES 1-20," NEW YORK CITY POLICE
OFFICER MICHAEL McCARTHY, NEW YORK
CITY POLICE OFFICER PAUL BLISS, NEW
YORK CITY POLICE OFFICER STEPHEN
ALLOCCA, NEW YORK CITY POLICE OFFICER
ALEXANDER GAVILAN, NEW YORK CITY
POLICE OFFICER KEVIN SHORT, NEW YORK
CITY POLICE OFFICER ENDORA SHROPSHIRE,
NEW YORK CITY POLICE SERGEANT JOHN
TOSCANO,

                            DEFENDANTS.
_____

      Plaintiff CORIN MILLS, by his attorneys, STECKLOW COHEN & THOMPSON, complaining of the defendants, respectfully alleges as follows:

## I. PRELMINARY STATEMENT

  1.   Plaintiff CORIN MILLS bring this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

On February 8, 2013, Plaintiff CORIN MILLS was trying to purchase a metrocard from a subway kiosk when he was accosted by Defendant NEW YORK CITY POLICE OFFICER MICHAEL McCARTHY.  Plaintiff CORIN MILLS tried to leave the station to avoid trouble, but Defendant NEW YORK CITY POLICE OFFICER MICHAEL McCARTHY pursued and apprehended Plaintiff CORIN MILLS and proceeded to call for backup, including but not limited to NEW YORK CITY POLICE OFFICER PAUL BLISS, NEW YORK CITY POLICE OFFICER STEPHEN  ALLOCCA, NEW YORK CITY POLICE OFFICER ALEXANDER GAVILAN, NEW YORK CITY  POLICE OFFICER KEVIN SHORT, NEW YORK

CITY POLICE OFFICER ENDORA SHROPSHIRE and NEW YORK CITY POLICE SERGEANT JOHN TOSCANO, some or all of whom then brutally beat and tased Plaintiff CORIN MILLS once he was already restrained and compliant. Plaintiff CORIN MILLS suffered a broken nose, taser burns and multiple lacerations requiring stitches as a result of his injuries inflicted by police without need or justification, in the absence of due care.

## II. JURISDICTION

2.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

3.  Plaintiff CORIN MILLS further invokes this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III. VENUE

4.  Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because the claims arose in this district.

## IV. JURY DEMAND

5.  Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V. THE PARTIES

6.  At all times relevant to this action, Plaintiff CORIN MILLS was a resident of the City of New York, State of New York, and the County of New York.

7.  Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.  Defendant THE CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

9.  That at all times hereinafter mentioned, Defendant NEW YORK CITY POLICE OFFICER MICHAEL McCARTHY, NEW YORK CITY POLICE OFFICER PAUL BLISS, NEW YORK CITY POLICE OFFICER STEPHEN ALLOCCA, NEW YORK CITY POLICE OFFICER ALEXANDER GAVILAN, NEW YORK CITY

POLICE OFFICER KEVIN SHORT, NEW YORK CITY POLICE OFFICER ENDORA SHROPSHIRE NEW YORK CITY POLICE SERGEANT JOHN TOSCANO and the Defendant NEW YORK CITY POLICE OFFICERS "JOHN DOES 1-20" (collectively, "Defendant Police Officers," individually, "Defendant Police Officer") were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

  10.  That at all times relevant to this action, the Defendant Police Officers either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

  11.  Each and all of the acts of the Defendant Police Officers alleged herein were done by said Defendants while acting within the scope of their employment by Defendant CITY OF NEW YORK.

  12.  Each and all of the acts of the defendant Police Officers alleged herein were done by said defendants while acting in furtherance of their employment by Defendant CITY OF NEW YORK.

### VI. FACTS COMMON TO ALL CLAIMS

  13.  Plaintiff CORIN MILLS is an African-American male resident of the City, County and State of New York.

  14.  On February 8, 2013, at or around 10:30 PM, Plaintiff CORIN MILLS was purchasing a metrocard outside of the subway fare gates of the 125th Street A/B/C/D subway station located at 125th Street and St. Nicholas Avenue in New York, New York.

  15.  Before he could complete his purchase, Plaintiff CORIN MILLS heard a police officer, Defendant NEW YORK CITY POLICE OFFICER MICHAEL McCARTHY ("Defendant OFFICER MCCARTHY") shout, in sum and substance, "HEY YOU!"

  16.  Plaintiff CORIN MILLS was not engaged in any criminal conduct or in possession of any contraband.

  17.  However, as an African-American male resident of the City of New York, Plaintiff CORIN MILLS knew better than to approach or engage with a shouting police officer, particularly in Harlem on a Friday night.

  18.  On information and belief, it is widely known in New York's minority communities that innocence is not a defense to arrest by New York City Police Officers.

3

**19.** On information and belief, it is widely known in New York's minority communities that cooperation with New York City Police Officers will not prevent unnecessary and improper applications of force by New York City Police Officers.

**20.** Without checking to see whether Defendant OFFICER MCCARTHY was shouting at him, Plaintiff CORIN MILLS cancelled his transaction and exited the train station.

**21.** Plaintiff CORIN MILLS proceeded along 125th Street to the 2/3 subway station located at 125th Street and Lenox Avenue.

**22.** As he entered the station, Plaintiff CORIN MILLS saw an acquaintance and exchanged greetings with him.

**23.** Before long, Plaintiff CORIN MILLS saw Defendant OFFICER MCCARTHY enter the station.

**24.** Plaintiff CORIN MILLS was frightened and began to exit the station, but was physically seized at the top of the steps by Defendant OFFICER MCCARTHY.

**25.** Defendant OFFICER MCCARTHY told Plaintiff CORIN MILLS to put his hands behind his back.

**26.** Defendant OFFICER MCCARTHY had not observed Plaintiff CORIN MILLS engage in any conduct that would justify Defendant OFFICER MCCARTHY in arresting Plaintiff CORIN MILLS.

**27.** On information and belief, no one had called in any complaints against Plaintiff CORIN MILLS that would justify Defendant OFFICER MCCARTHY in arresting Plaintiff CORIN MILLS.

**28.** No warrants for Plaintiff CORIN MILLS' arrest were outstanding that would justify Defendant OFFICER MCCARTHY in arresting Plaintiff CORIN MILLS.

**29.** Plaintiff CORIN MILLS asked Defendant OFFICER MCCARTHY why he was being arrested.

**30.** Plaintiff CORIN MILLS addressed Defendant OFFICER MCCARTHY respectfully.

**31.** Plaintiff CORIN MILLS did not raise his voice at Defendant OFFICER MCCARTHY.

**32.** Defendant OFFICER MCCARTHY mechanically told Plaintiff CORIN MILLS to put his hands behind his back again and again, for no apparent reason.

**33.**   Defendant OFFICER MCCARTHY told Plaintiff CORIN MILLS, in sum and substance, that it would be worse for him if backup came.

**34.**   Plaintiff CORIN MILLS did not observe Defendant OFFICER MCCARTHY calling for backup.

**35.**   After a short time, however, at least four (4) additional Defendant POLICE OFFICERS arrived.

**36.**   On information and belief, approximately twenty (20) to thirty (30) Defendant POLICE OFFICERS arrived at the scene of the incident as the incident was in progress.

**37.**   Without further communication, the Defendant POLICE OFFICERS slammed Plaintiff CORIN MILLS to the ground and began to beat and kick him.

**38.**   Plaintiff CORIN MILLS did not resist or fight back in any way.

**39.**   Plaintiff CORIN MILLS suffered a broken nose as a result of the conduct of the Defendant POLICE OFFICERS.

**40.**   Plaintiff CORIN MILLS suffered multiple lacerations requiring stitches as a result of the conduct of the Defendant POLICE OFFICERS.

**41.**   Plaintiff CORIN MILLS was tased twice by Defendant NEW YORK CITY POLICE SERGEANT JOHN TOSCANO.

**42.**   Bystander video of the incident shows that Plaintiff CORIN MILLS was not resisting or fighting back as he was beaten and tased by Defendant NEW YORK CITY POLICE SERGEANT JOHN TOSCANO.

**43.**   Bystander video of the incident captures Plaintiff CORIN MILLS' screams of pain and anguish as he was beaten and tased by the Defendant POLICE OFFICERS.

**44.**   After a time, the Defendant POLICE OFFICERS handcuffed Plaintiff CORIN MILLS, picked him up by his arms and threw him into a police car.

**45.**   At or around that time, Plaintiff CORIN MILLS noticed that his shirt was covered in blood.

**46.**   Plaintiff CORIN MILLS remained in the police car for a time, until an ambulance arrived.

47. None of the Defendant POLICE OFFICERS told Plaintiff CORIN MILLS that he was under arrest.

48. None of the Defendant POLICE OFFICERS told Plaintiff CORIN MILLS why he was being arrested.

49. On information and belief, New York City Police Officers such as the Defendant POLICE OFFICERS would have responded to the questions of a Caucasian individual inquiring as to why they were being detained and whether they were under arrest.

50. Plaintiff CORIN MILLS was taken by the ambulance to Harlem Hospital, where he received treatment for his broken nose, and stitches and other treatment for his lacerations, all of which had been inflicted by the Defendant POLICE OFFICERS.

51. Thereafter, Plaintiff CORIN MILLS was transported to a police precinct, where he was held for several hours before being transferred to New York County Central Booking.

52. Upon arriving at the precinct, Plaintiff CORIN MILLS was searched.

53. The search of Plaintiff CORIN MILLS's person revealed nothing that would support allegations of criminal misconduct or misfeasance of Plaintiff CORIN MILLS's part.

54. At his arraignment the following evening, Plaintiff CORIN MILLS pled guilty to a violation on the advice of his appointed counsel and was sentenced to time served.

55. At no time did any of the Defendant Police Officers explain to Plaintiff CORIN MILLS why he was being arrested.

56. Upon information and belief, the Defendant Police Officers did not formulate a rationale for arresting Plaintiff CORIN MILLS before arresting him.

57. Upon information and belief Plaintiff CORIN MILLS was arrested without probable cause.

58. As a result of the foregoing, Plaintiff CORIN MILLS sustained, *inter alia,* physical injuries, mental injuries, emotional distress, embarrassment, humiliation and deprivation of his constitutional rights.

59. Plaintiff CORIN MILLS has complied with all relevant provisions of GML 50 with respect to the claims at issue herein.

**FIRST CLAIM FOR RELIEF**
**DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

60. Plaintiff CORIN MILLS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

61. All of the aforementioned acts of the Defendants, their agents, servants and employees, were carried out under the color of state law.

62. All of the aforementioned acts deprived Plaintiff CORIN MILLS of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

63. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

64. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

65. The Defendant POLICE OFFICERS and Defendant CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

66. As a result of the foregoing, Plaintiff's liberty was restricted for an extended period of time; he was put in fear for his safety and he was humiliated, without probable cause.

67. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to his reputations and standing within his community.

68. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**EXCESSIVE USE OF FORCE UNDER 42 U.S.C. §1983**

69. Plaintiff CORIN MILLS repeats reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

70. Plaintiff CORIN MILLS was beaten, struck, kicked, and tased by multiple

Defendant POLICE OFFICERS in the absence of any need for said applications of force.

71. Plaintiff CORIN MILLS was subjected to excessive force by one or more individual Defendant Police Officers, in violation of his rights as guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

72. As a result of the above constitutionally impermissible conduct, Plaintiff CORIN MILLS was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to their reputations and standing within their community.

73. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## THIRD CLAIM FOR RELIEF
## FAILURE TO INTERVENE UNDER 42 U.S.C. §1983

74. Plaintiff CORIN MILLS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

75. The Defendant POLICE OFFICERS and Defendant CITY OF NEW YORK had an affirmative duty to intervene on Plaintiff CORIN MILLS's behalf to prevent the violation of his constitutional rights.

76. The individual Defendant POLICE OFFICERS failed to intervene on Plaintiff CORIN MILLS's behalf to prevent the violation of his constitutional rights despite having had a realistic opportunity to do so.

77. The individual Defendant POLICE OFFICERS failed to intervene on Plaintiff CORIN MILLS 's behalf to prevent the violation of his constitutional rights despite having substantially contributed to the circumstances within which the plaintiff's rights were violated by their affirmative conduct.

78. As a result of the aforementioned conduct of the individual Defendants, Plaintiff CORIN MILLS's constitutional rights were violated.

79. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to his reputation and standing within his community.

80. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY UNDER *MONELL* ARISING FROM

## **UNCONSTITUTIONAL POLICIES, PRACTICES AND CUSTOMS**

81. Plaintiff CORIN MILLS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

82. Defendants arrested and incarcerated Plaintiff CORIN MILLS in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiffs' liberty, well-being, safety and constitutional rights.

83. Upon information and belief, the arrest of Plaintiff CORIN MILLS was unlawful and lacked probable cause.

84. Upon information and belief, Plaintiff CORIN MILLS was arrested to justify his wrongful seizure and detainment by the Defendant Police Officers.

85. Upon information and belief, the wrongful arrest of Plaintiff CORIN MILLS was not undertaken by the Defendant Police Officers in furtherance of their duties, or otherwise privileged.

86. Upon information and belief, the arrest and detention of Plaintiff CORIN MILLS was undertaken to clothe the wrongful actions of the Defendant Police Officers under color of law.

87. As a result of the aforementioned conduct of the Defendant CITY OF NEW YORK and the individual Defendant POLICE OFFICERS, Plaintiff CORIN MILLS's constitutional rights were violated.

88. The acts complained of were carried out by the aforementioned individual Defendant Police Officers in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

89. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

90. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

a) wrongfully arresting individuals without probable cause due to perceived lack of respect for the police officer (i.e., "contempt of cop" arrests);

b) wrongfully arresting individuals without probable cause in attempts to justify excessive uses of force (i.e. "contempt of cop" "cover charge" arrests);

c) condoning needless and excessive applications of force against civilians by New York City Police Officers.

91. On July 7, 1994, a blue ribbon panel led by Hon. J. Milton Mollen ("The Mollen Commission") presented the report of its nearly two-year investigation into allegations of NYPD corruption, undertaken in 1992 at the behest of then-Mayor David Dinkins ("The Mollen Commission Report," "The Report").[1]

92. The July 7, 1994 Mollen Commission Report was prepared for and at the request of the Defendant CITY OF NEW YORK, and therefore knowledge of its contents may be imputed to Defendant CITY OF NEW YORK.

93. The Mollen Commission Report found that police officers commonly covered up their fellow officers' misconduct, including but not limited to excessive applications of force against civilians, in accordance with a custom or practice known as a "code of silence" or "Blue Wall of Silence."

94. The above-referred custom or practice of members of the New York City Police Department known as the "Blue Wall of Silence" was discussed at length on pages 53-59 of the July 7, 1994 Mollen Commission Report.

95. The *Mollen Commission Report* explicitly identified police brutality, including "implicit or explicit threat[s] of physical harm[,]" and official tolerance thereof, as critical issues that must be investigated by "any Commission investigating police corruption." Id. at 44.

96. The *Mollen Commission* went on to fault the NYPD's intelligence gathering regarding incidents of brutality as "wholly inadequate." Id. at 45.

97. The *Mollen Commission* found that "[police b]rutality is… used as a rite of initiation to prove that an officer is a tough or 'good' cop, one who can be accepted and trusted by his fellow officers not to report wrongdoing." Id. at 47.

98. One officer who testified before the Mollen Commission noted that brutality "is a form of acceptance. It's not simply giving a beating. It's the other officers begin [sic] to accept you more." Id.

99. The Mollen Commission also found that NYPD "supervisors sometimes turn a blind eye to evidence of unnecessary violence…. [b]ecause a complaint usually comes down to an officer's word (and often the word of fellow officer witnesses) against the… [complainant's] word, it is easy for a supervisor to let clear acts of brutality slide by without recourse." The Report at 49.

---

[1] Mollen, Baer, Evans, Lankler, Tyler, Armao, Cornfeld, "The City of New York Commission to Investigate Allegations of Police Corruption and The Anti-Corruption Procedures of The Police Department Commission Report," July 7, 1994, City of New York.  Incorporated by reference herein and available online at http://www.parc.info/client_files/Special%20Reports/4%20-%20Mollen%20Commission%20-%20NYPD.pdf.

**100.** Upon information and belief, Defendant CITY OF NEW YORK did not take meaningful steps to eliminate the custom or practice of officers employing excessive force against civilians.

**101.** Upon information and belief, Defendant CITY OF NEW YORK did not take meaningful steps to eliminate the enabling custom or practice of officers actively or passively covering up other officers' misconduct, including but not limited to employing excessive force against civilians.

**102.** That the Defendant CITY OF NEW YORK continued to have notice after 1994 that the officers and commanders of the New York City Police Department continued to tolerate and encourage police to lie to cover up the wrongful conduct of themselves and their fellow officers after the publication of the Mollen Commission Report can be shown with reference to the following cases:

    a. **Ariza v. City of New York**, 1996 U.S. Dist. LEXIS 20250, 14 (E.D.N.Y. March 7, 1996) ["The [municipal] defendants concede, however, that the code exists to prevent other officers from reporting corruption or dishonesty by fellow officers…. [t]he principle behind the 'blue wall of silence' is that officers will suffer recrimination for breaking ranks and subjecting police conduct to public scrutiny."]

    b. **White-Ruiz v. City of New York**, 1996 U.S. Dist. LEXIS 15571, 23 (S.D.N.Y. October 21, 1996) ["[P]laintiff offers sufficient evidence to permit a reasonable trier of fact to infer that the 'blue wall of silence' constitutes a custom or usage of the Department"]

    c. **United States v. Rosario**, 237 F. Supp. 2d 242, 248 (E.D.N.Y. 2002) ["[Assistant U.S. Attorney] Palmer testified that while supervising the federal investigation into the Louima assault, she routinely confronted a 'blue wall of silence' erected by police officers and PBA officials intent on obstructing efforts to uncover the full truth about what had happened at the 70th precinct on August 9, 1997."]

    d. **Barry v. New York City Police Dep't**, 2004 U.S. Dist. LEXIS 5951, 40-41 (S.D.N.Y. April 7, 2004) ["[P]laintiff's witnesses speak from firsthand experience about the blue wall of silence…. Plaintiff complains of acts that are of the precise nature as the customs and practices described in the [Mollen Commission] Report."

    e. **Griffin v. City of New York et al.**, 10-CV-01824 (E.D.N.Y. 2010) [Plaintiff detective sues on pattern of retaliation following

>his reporting fellow detective to Internal Affairs, fellow officers cover for detective accused of misconduct, see, e.g., at ¶35: "Internal Affairs conducted its investigation into [Detective] Plaintiff's allegations [of misconduct] against [Detective] McCarthy. All of the material witnesses failed to cooperate with the investigation by being less than truthful…. [a]s a result, the allegations made by Plaintiff against McCarthy were dismissed as unsubstantiated."]

**103.** Upon information and belief, and despite due and repeated notice that New York City Police Officers have an ongoing decades-old custom or practice of charging individuals with crimes and violations for personal vindication and/or as pretexts to justify use of force, to date, Defendant CITY OF NEW YORK has not implemented any particular training, oversight measures or policies designed or intended to curtail the improper use by New York City Police Officers of so-called "contempt of cop" and "cover charge" charges.

**104.** Upon information and belief, and despite due and repeated notice that New York City Police Officers have an ongoing custom or practice of charging individuals with crimes and violations for personal vindication and/or as pretexts to justify use of force, to date, Defendant CITY OF NEW YORK has not implemented any particular training, oversight measures or policies designed or intended to curtail the improper use by New York City Police Officers of so-called "contempt of cop" and "cover charge" charges.

**105.** Upon information and belief, the above-referred constitutionally violative policies, practices and customs remain widespread, open, and notorious throughout the NYPD to date.

**106.** Upon information and belief, the policymakers of the NYPD and Defendant CITY OF NEW YORK are aware that these practices and customs of NYPD officers continue to date, and have failed to take adequate steps to curb these practices and customs, which regularly cause the violation of citizens Constitutional rights.

**107.** Defendant CITY OF NEW YORK has failed to meaningfully curb these Constitutionally-violative customs and practices to date.

**108.** As a result of the aforementioned conduct of the Defendant CITY OF NEW YORK and the individual Defendant Police Officers, Plaintiff CORIN MILLS 's constitutional rights were violated.

**109.** As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, Plaintiff CORIN MILLS was brutally beaten, tased, falsely arrested and incarcerated.

**110.** As a result of the above constitutionally impermissible conduct, Plaintiff CORIN MILLS was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to his reputation and standing within his community.

**111.** As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## FIFTH CLAIM FOR RELIEF
## EQUAL PROTECTION UNDER 42 U.S.C. § 1983

**112.** Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**113.** At all times described herein, Plaintiff CORIN MILLS was possessed of the right to equal protection under the laws, as guaranteed under the 14th Amendment to the United States Constitution.

**114.** The Defendants detained, brutalized and arrest Plaintiff CORIN MILLS without explanation, notwithstanding their knowledge such conduct would jeopardize Plaintiff's liberty, well-being, safety and constitutional rights.

**115.** The acts complained of were carried out by the Defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

**116.** The acts complained of were carried out by the Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

**117.** The actions of the Defendants, heretofore described, constituted unlawful detention, imprisonment, assault, and battery and were designed to and did cause mental harm, physical harm, pain, and suffering both in violation of Plaintiffs' Constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the Plaintiffs' exercise of their civil and constitutional rights of free, free expressive association as guaranteed by the Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

**118.** On information and belief, Defendants would not have detained, brutalized or arrested a Caucasian individual otherwise similarly situated to Plaintiff CORIN MILLS, without explanation or even a modicum of courtesy, in the manner in

which Defendants detained, brutalized and arrested Plaintiff CORIN MILLS without explanation.

**119.** As a result of the foregoing conduct, Plaintiff CORIN MILLS was caused to suffer personal injuries, violations of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, and other irreparable damage to his life.

**120.** As a result of Defendants' impermissible conduct, Plaintiff CORIN MILLS demands judgment against Defendants in a sum of money to be determined at trial.

**SIXTH CLAIM FOR RELIEF**
**STATE LAW BATTERY**

**121.** Plaintiff CORIN MILLS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**122.** Defendants who apprehended Plaintiff CORIN MILLS intentionally struck and injured Plaintiff CORIN MILLS by tasing, kicking and repeatedly striking Plaintiff CORIN MILLS.

**123.** Defendants who apprehended Plaintiff CORIN MILLS intentionally touched Plaintiff CORIN MILLS with an intent to cause harm to Plaintiff CORIN MILLS.

**124.** The circumstances presented to Defendants at that time did not support the above applications of force on Plaintiff CORIN MILLS.

**125.** Plaintiff CORIN MILLS was caused to suffer personal injuries, negligent and intentional infliction of emotional distress, anguish, anxiety, fear and humiliation by Defendants' non-consensual and unprivileged physical contact.

**126.** As a result of the foregoing, Plaintiff CORIN MILLS is entitled to compensatory damages and punitive damages against Defendants in amounts to be determined at trial.

**SEVENTH CLAIM FOR RELIEF**
**NEGLIGENCE AS TO ALL DEFENDANTS**

**127.** Plaintiff CORIN MILLS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**128.** Defendants owed Plaintiff CORIN MILLS a duty of care in their interactions with Plaintiff CORIN MILLS.

**129.** Defendants breached that duty of care in their interactions with Plaintiff CORIN MILLS, in manners including but not limited to: employing excessive and unnecessary force against Plaintiff CORIN MILLS, improperly stopping and detaining Plaintiff CORIN MILLS, and arresting Plaintiff CORIN MILLS in the absence of probable cause.

**130.** As a result of the foregoing conduct, Plaintiff CORIN MILLS was caused to suffer personal injuries, violations of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, and other irreparable damage to his life.

**131.** As a result of Defendants' impermissible conduct, Plaintiff CORIN MILLS demands judgment against Defendants in a sum of money to be determined at trial.

### EIGHTH CLAIM FOR RELIEF
### STATE LAW NEGLIGENT HIRING AND RETENTION AGAINST DEFENDANT CITY OF NEW YORK

**132.** Plaintiff CORIN MILLS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**133.** Upon information and belief, Defendant THE CITY OF NEW YORK failed to use reasonable care in the hiring and retention of the Defendant POLICE OFFICERS, who conducted and participated in the arrest and acts of battery against Plaintiff CORIN MILLS.

**134.** Defendant CITY OF NEW YORK knew, or should have known in the exercise of reasonable care, the propensities of the aforesaid Defendant POLICE OFFICERS to engage in the wrongful conduct heretofore alleged in this Complaint.

**135.** As a result of the foregoing conduct, Plaintiff CORIN MILLS was caused to suffer personal injuries, violations of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, and other irreparable damage to his life.

**136.** As a result of Defendants' impermissible conduct, Plaintiff CORIN MILLS demands judgment against Defendants in a sum of money to be determined at trial.

### NINTH CLAIM FOR RELIEF
### STATE LAW NEGLIGENT TRAINING AND SUPERVISION

**137.**   Plaintiff CORIN MILLS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**138.**   Upon information and belief the Defendant THE CITY OF NEW YORK failed to use reasonable care in the training and supervision of the aforesaid Defendant POLICE OFFICERS who conducted and participated in the arrest, unlawful searches, and acts of battery against Plaintiff CORIN MILLS.

**139.**   As a result of the foregoing conduct, Plaintiff CORIN MILLS was caused to suffer personal injuries, violations of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, and other irreparable damage to his life.

**140.**   As a result of Defendants' impermissible conduct, Plaintiff CORIN MILLS demands judgment against Defendants in a sum of money to be determined at trial.

   WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

   [a] Invoke pendent party and pendent claim jurisdiction.

   [b] Award appropriate compensatory and punitive damages.

   [c] Award appropriate declaratory and injunctive relief.

   [d] Empanel a jury.

   [e] Award attorney's fees and costs.

   [f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:    New York, New York
          April 16, 2014

Respectfully submitted,

_____~//s//~_____
SAMUEL B. COHEN [SC 0622]
STECKLOW COHEN & THOMPSON
10 SPRING STREET – SUITE 1
New York, New York 10012
[212] 566-8000
[212] 202-4952/FAX
SAM@WYLIELAW.COM
ATTORNEYS FOR PLAINTIFF